NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-763

COMMONWEALTH

vs.

CHRISTOPHER HAMILTON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Superior Court, the defendant, Christopher Hamilton, was convicted of aggravated rape, rape of a child, kidnapping of a child, two counts of indecent assault and battery on a child under fourteen, and two counts of assault and battery. He appeals, contending that certain statements made in the prosecutor's closing argument were improper. We affirm.

Background. The jury could have found the following facts. Between 2016 and 2017, the defendant lived with his brother and his brother's family at his brother's home. The defendant was

present on multiple occasions when the victims, Kailee[1] and Mariam[2], were at that home.

Once in the summer of 2016, Kailee, who was seven years old, asked the defendant for a snack. In response, the defendant picked her up, put her over his shoulder, carried her to his bedroom, and tossed her on the bed. He then closed the door and began giving Kailee "wedgies," pulling her underwear up high. When Kailee was at the home again that summer, the defendant put her on his bed face down, put a blanket over her head, pulled down her pants and underwear, and inserted his finger into her "butthole." On a third occasion that summer, Kailee went to the defendant's bedroom and asked for a snack. He closed the door, put the same blanket over her head, pulled down her pants, and inserted his finger into her "butthole" as she lay face down on his bed. Kailee told her babysitter about these assaults in August of 2017.

Mariam lived next door to the defendant and regularly played with his nephews. On one occasion when Mariam was six years old, she was alone with the defendant in his living room. The defendant asked Mariam how many butterflies were on her dress. When Mariam responded that she did not know, the

---

[1] A pseudonym.

[2] A pseudonym.

2

defendant told her to come over to him so that he could count them.  The defendant then told Mariam to lay down on her stomach, which she did.  The defendant counted the butterflies on the backside of Mariam's dress, including her back and her "butt," by poking each one with his finger.  The defendant then lifted her dress and pulled down her shorts.  He then brought Mariam into his bedroom, he closed the door, and Mariam laid down on his bed on her stomach.  The defendant again pulled Mariam's shorts down and "poke[d]" each star on her underwear. The next day, Mariam told her father about the incident.

Discussion.  The defendant contends that the prosecutor made improper statements during his closing argument, inflaming the passion of the jury and thereby creating a substantial risk of a miscarriage of justice.  Because the defendant did not object at trial, we review to determine whether any error created a substantial risk of a miscarriage of justice, examining the statements in light of the entire argument, the judge's instructions to the jury, and the evidence at trial. See Commonwealth v. Renderos, 440 Mass. 422, 425 (2003).  We also note that the absence of an objection from trial counsel is some indication that, in context, the prosecutor's words were more innocuous than now argued.  See Commonwealth v. Mello, 420 Mass. 375, 380 (1995).

3

The defendant argues that the prosecutor's statements constituted unwarranted hyperbole and were intended to "sway the jurors beyond a fair calculation of the facts and circumstances of the case itself."  We are not persuaded.  Taken in context, the prosecutor's closing argument consisted of permissible comments and inferences about the defendant's behavior based on the evidence presented.  See Commonwealth v. Johnson, 429 Mass. 745, 748-749 (1999).

Indeed, all the challenged statements were based on either direct evidence or fair inferences drawn from the evidence.  See, e.g., Commonwealth v. Vazquez, 478 Mass. 443, 451-452 (2017).  The prosecutor's statements that the defendant "could not satisfy his sexual desire for," and "couldn't get enough of," the young girls, were consistent with the testimony of the two victims.  As the record reflects, the defendant's conduct was not limited to a single act or a single victim.

The prosecutor's statement that the defendant "focused" on the young girls was also a fair inference supported by the testimony.  See, e.g., Vazquez, 478 Mass. at 451-452.  Moreover, the judge instructed the jury twice that closing arguments are not evidence.  We presume the jury followed those instructions. See Commonwealth v. Degro, 432 Mass. 319, 328 (2000).

Viewing the challenged statements in context of the whole closing argument, the judge's instructions to the jury, and the

4

Commonwealth's evidence, there was no error, let alone a substantial risk of a miscarriage of justice. See <u>Renderos</u>, 440 Mass. at 425.

<u>Judgments affirmed</u>.

By the Court (Blake, C.J., Desmond, & Singh, JJ.[3]),

Paul Little

Clerk

Entered:  October 14, 2025.

---

[3] The panelists are listed in order of seniority.